Justice Maureen Connors presiding, case number 1-9-0253, People v. Angelo Graham. Thank you very much, Darren. I appreciate that. And good morning, or really good afternoon, I should say, to all. And I want to welcome you to the Illinois Appellate Court, Sixth Division. Now, I want the lawyers to identify themselves by name and who they represent. And if you're from a firm, please make sure you name the firm. And will the appellant begin, please? Good afternoon, Your Honor. My name is Libby Deshaies from Winston-Enstrand, and I'm pro bono counsel for the defendant appellant, Mr. Angelo Graham. Just to clarify, you are from Winston-Enstrand, and there was another name that we were looking for. I see that your name has shown up now appropriately. There was another name that was on the screen earlier, but there's no question you are involved in this case and authorized to make this argument. Is that right? I am. I apologize for the error of signing in. No problem, counsel. Thank you. And for the appellee? Good afternoon, Your Honor. Celeste Kinney, Assistant State's Attorney on behalf of the people of the state of Illinois. Thank you very much, both of you. And the rules provide for 20 minutes for beginning arguments, and then we'll allow some time for final rebuttal, if you'd like, Ms. Deshaies. And I think we're ready to go. Anything preliminary we need to discuss? I would just be asking one question of the pro bono counsel. Are you licensed currently, or are you awaiting admission to the bar? I am licensed currently. Thank you. Proceed. All right. Thank you very much. And is the appellant ready to proceed? I am, Your Honor. Counsel, please begin if you will. Thank you. May it please the court. As I said, my name is Libby Deshaies, and I am pro bono counsel for Mr. Angelo Graham. I would like to reserve five minutes for rebuttal. Perfectly fine. Thank you. The facts of this case are fairly straightforward. Mr. Graham called the tow service when his car broke down on the highway south of Chicago. The driver took Graham's information and agreed to tow the car, but he did not quote a price. When they reached Chicago, Graham was unable to pay the full amount the driver demanded, and the driver refused to take Graham's car off the truck without full payment. Graham then forced the driver to take him and his car to another location. On the way, the driver intentionally crashed the truck, ran into a gas station, and called the police. Under Illinois law, these facts describe a theft of services. Instead, the state charged Mr. Graham with aggravated kidnapping, despite long-standing Illinois precedent recognizing the inherent inequity of prosecuting a criminal defendant for kidnapping when the confinement was merely incidental to the commission of another offense. The state's failure to prove the aggravated kidnapping charge is the first of three reasons why Mr. Graham's convictions should be reversed. The second is that the state also failed to prove beyond a reasonable doubt that Mr. Graham used a firearm in the commission of the alleged offenses. And third, Mr. Graham's convictions should be reversed because of cumulative and prejudicial errors that occurred at trial. I'd like to start with the state's failure to prove the aggravated kidnapping charge. The state prosecuted Mr. Graham on the theory that he secretly confined the tow truck driver against his will, but the driver was never secretly confined. At all times, the driver was in control of his truck, seated in front where passersby had an unobstructed view of him. He was carrying a cell phone and a GPS device. The dispute began in a dual Osco parking lot where others, including a Unlike the facts described in the cases cited by the state, the driver was not confined to the trunk or made to lie down so he was not visible to others on the road. He was not forced to drive around for hours to elude detection. He was not forced into the truck and he made no effort to get out of the truck, honk his horn, or call for help. The state argues that the driver was secretly confined because he was afraid Graham would use force if he attracted attention. That speculative theory might make sense if the complaining witness were blocked from contacting others while held in a remote location, but not while parked in his truck near a police officer or while driving down a highway. Even if the driver were confined, though, the confinement was limited to what was necessary to complete the underlying offense of theft of services, and so the aggravated kidnapping charge fails as a matter of law. Council, can I ask you a question? As far as the secret confinement, doesn't the case law say that it depends on the circumstances of each case? Has to be taken looking at the total fact situation of each case, is that right? Yes, Your Honor. You cite Lamb Key and some other cases that have totally different fact patterns than what we have in this case. Isn't this case more akin to people versus Bishop or people versus Siguenio Rito? I mean, the facts are so different. Can you explain that to me? The facts in each of these cases are different, Your Honor. Here we don't have any affirmative action by Graham to secretly confine the driver. We don't have him pushing him into a truck. We don't have him telling him to take a circuitous route or to drive at a rapid speed to avoid detection. All that occurred was that Graham was sitting in the front seat of his truck as he normally does when towing a vehicle. What about the use of the gun? Well, Your Honor, the state did not prove that Mr. Graham had a gun, and I'll speak to that in a moment. But I do think even if we assume that he did have a gun, here it doesn't prove that he was secretly confined. At all times, they were in a public place. The test is sort of whether there was a meaningful access to public, and here the driver at all times was on public highways with others in the area with devices that could have attracted attention. And I think the fact that if he did have a gun, you're seated next to a police officer or driving in a vehicle, you're not in a place where you're in a place to be threatened physically. Whether or not he had a gun, didn't he indeed force the victim to drive out of the parking lot and start driving in his direction? He did. So why isn't that a seizure of him in the vehicle and a seizure paramount to a kidnapping? Well, here the state only moved under the theory of confinement and not aspiratation, which is a bit different when you're taking someone from one location to another. But here, when we look at all the facts together, yes, they did move from one location to another, at all times it was in public, at all times the driver remained in control of the vehicle. You say look at all the factors, are you saying because how was it in public? He was confined to the vehicle. He was confined to the vehicle, but it wasn't a situation where he was pushed into the trunk of the vehicle. Like some of the cases, he wasn't told to lie down, he wasn't told to take a circuitous route for purposes of avoiding detection. They were on 90-94, they were on Highway 290, they were in a Jules Esco parking lot where people are walking by. This is a truck with big windows where everybody could see what was going on. And even in this case, if the driver were confined, the confinement here was limited to what was necessary to complete the theft of services, and so the aggravated kidnapping charge fails as a matter of law. This is known as the Levy-Lombardi Doctrine, which Illinois courts have adopted from New York law. Where a confinement is merely incidental to the commission of another crime, the charge of kidnapping is not provable. Four factors are used to help determine whether a confinement is incidental to the commission of another crime, or whether a separate kidnapping charge is appropriate. One, the duration of the detention. Two, whether the detention occurred during the commission of a separate offense. Three, whether the detention is inherent to the separate offense. And four, whether the detention created a significant danger independent of that posed by the separate offense. Each factor here demonstrates the confinement was incidental to the offense of theft of services. Therefore, kidnapping should not have been charged and have been proved as a matter of law. First, while the record does not specify exactly how long the detention lasted, it extended no longer than necessary to complete the underlying theft of services. Second, the detention occurred entirely during the theft of services. At no point did Grim complete the theft, receive back his vehicle, and then detain the driver. Third, the detention was inherent in the theft. While detention is not an element of theft of services per se, under the facts of this case, it was inherent to the theft of the driver's services. It enabled Grim to use the tow truck's driver's services, which are normally available for pay, without payment. The state focuses on the idea that the record does not prove Grim could not have stolen the tow truck and unloaded the vehicle on his own, thereby avoiding the detention. But the record suggests that Grim could not, on his own, steal the truck and unload his own vehicle. He driver. He tried to start the truck at the gas station, was unsuccessful, and ran away. In any event, this is irrelevant. The need for a service versus the want of a service does not define the fact that it was a theft. What matters here is the detention was used to take the tow truck's driver's services without payment. Counsel, as far as number three, you mentioned inherent in a separate offense. Explain to me how it's inherent in the theft of services. I think the key fact here, your honor, is that we're talking about a tow truck driver. The service that he offers to the public is that he will come collect the vehicle and drive the vehicle to another location. Theft of services under Illinois law is defined as the knowing, knowingly obtaining the temporary use of services of another, which are available for hire by means of threat or deception. That's exactly what happened here. There was a threat of force to use the services of the tow truck driver. So the driver had to be, to use the driver's services, he had to be detained. Do you have any case on that? Do you cite any cases on that? We don't have any cases specific to this incident because it is so unique to the facts of the case, but I think it is inherent when we're talking about a service, instead of a theft of property, which could have occurred if he had just taken the truck himself. Okay. The fourth factor is that the detention created no significant risk of danger, independent of that inherent in the underlying offense. The confinement occurred during the theft and was essential to completing it. And any danger associated with the confinement was inherent to the underlying theft. At all times, the driver remained in control of the vehicle. There is no evidence grant forcing to take a dangerous route or drive at an unsafe speed or take any other unsafe action to avoid detection. Therefore, the confinement was incidental to the theft and the kidnapping charge fails as a matter of law. Even the trial court at sentencing seemed to recognize that the outcome here does not appropriately reflect what occurred. The state tries to avoid the fatal legal weakness of its kidnapping charge by arguing that any theft of services was completed when the driver and Graham reached the parking lot and that the offense at that point became a kidnapping. But this is inconsistent with the undisputed facts. It was not until they reached Chicago that it was determined Graham could not pay the driver with the cash he had on him at the time. At that point, the driver refused to unload the vehicle without full payment. They continued to negotiate, could not reach an agreement. Graham then continued the use of the driver services to relocate the vehicle to another location with the intent that the driver would, using his expertise, unload the vehicle upon arrival. Therefore, the theft, if that's what it was, encompassed the confinement from the drive from the jewel parking lot to the destination in Maywood. Because the state failed to prove the driver was secretly confined or that any confinement was separate from the theft of services, the aggravated kidnapping conviction should be reversed outright. The unlawful restraint conviction that merged with the kidnapping conviction must also be reversed because that too is based on the state's flawed confinement theory. The state also failed to prove beyond a reasonable doubt that Graham possessed a firearm on the night at issue. And so for this additional reason, the aggravated kidnapping conviction and the armed habitual criminal conviction should be reversed. These offenses require that the act be done using a firearm. But no gun was recovered, no gun was on the video footage. The only evidence of a gun in this case is the driver's uncorroborated testimony that he thought he saw Graham with an object that was a gun. But the driver testified that he was not looking directly at the object. He was focused on the road. He testified that he never touched the object, that he never heard the object strike anything, which might have helped him determine the size, heft, or material of the item. The state points to cases in which the court has found a single eyewitness testimony sufficient to prove the presence of a firearm. But those cases say the eyewitness testimony that an offender is armed is sufficient if combined with evidence of circumstances under which a witness was able to see the weapon. For example, in People v. Washington, the Supreme Court stressed that the witness had an unobstructed view of the weapon for several minutes, and that allowed the reasonable juror to infer the defendant possessed a gun. Didn't the victim give a pretty good explanation and describe the gun? He did describe the gun, but he also said that he was looking out of the truck. He was watching the road. He didn't feel the gun like has been seen in other cases. He didn't hear the gun. And then none of the other evidence, Your Honor, corroborates that testimony. How about the fact that the defendant was holding his pocket when he was running away from them? Truck. He was seen holding his waist as he ran away from the truck. Your Honor, that is on the video footage. But I think there are multiple possible explanations for that. So if there was no gun, how do you explain that the driver continued to drive the defendant around post the Jules parking lot? Yeah, I don't think the record speaks to those facts necessarily, Your Honor. But if, you know, the victim did testify that Graham grabbed him sort of by the shirt sleeve and threatened him verbally, that could have been used to force them from one place to the other. Or it could have simply been that he said, I don't have the money to pay you here. We need to go to a third location. Okay. For these reasons, the state failed to prove Graham guilty of aggravated kidnapping, unlawful restraint, or being an armed habitual criminal. These convictions must be reversed, and he cannot be retried. Whereas here, the evidence is legally insufficient, the court must enter a judgment of acquittal, and any subsequent trial is precluded by the double jeopardy clause. In its brief, the state does not dispute that if the court agrees the evidence is sufficient, the convictions must be reversed, and the double jeopardy clause bars a new trial. If, however, the court concludes that there was sufficient evidence to prove Graham guilty of any of the charged crimes, Graham's conviction should still be reversed, and a new trial must be held. Graham was originally denied a fair trial for at least five reasons. The jury was not impartial. Inadmissible and improperly preserved evidence was introduced. Inadmissible witness testimony was heard. Irrelevant and prejudicial statements were made during closing argument, and the jury failed to comply with court instructions. Independently and cumulatively, these errors require reversal and a new trial. These are addressed... Counselor, I think you're making the argument that there was a juror issue between Maria Flores and Diana Flores, and that's one of the reasons it should be reversed as well? Yes, Your Honor. The record states that Maria Flores was questioned, said that she had some juror in this case, that her father had been kidnapped and killed, and therefore that she did not know whether she could be impartial. That's what the record... That was Maria? I know, but it says something else in another place, does it not? It does, and we recognize in the brief that there is some discrepancy in the record, but the state has never come forward with anything to say that there is an error in the transcript, and so based on the record before the court on appeal, we think that the transcript pretty clearly states that it is Maria Flores who testified about having a prior kidnapping in her family and that she could not be fair, and then she was added to the jury. But whose responsibility is it to provide us for a clear record? We have the record that we have, and we contend that the record is correct. We recognize that it may be confusing, but we think that it is correct. If the state contends that the record is not correct, we think that it's the state that should correct it. And what about the fact when this person was offered, there were no objections made, there wasn't any action by any attorneys to strike this juror? Is that forfeiture? That would be forfeiture, Your Honor. We think that here this is a plain error. Having a biased juror is obviously prejudicial, and in a case like this where the evidence is close, we have two witnesses and very little information about what occurred, and then you have a juror who's saying that she's not sure whether she can be fair. So we think the court should consider this issue under plain error. We also flagged in our brief that we don't have any information about how there was an ineffective assistance of counsel. Okay, continue, counsel. Just a couple more minutes now. I do want to, you know, these trial errors are sufficiently briefed. I believe I'm happy to take any questions on them now or on rebuttal, but I would refer you to the brief, and I just want to reiterate that Illinois courts have recognized that there's an inherent inequity in permitting kidnapping prosecutions of those who, in reality, commit lesser or different offenses of which temporary confinement or aspiration played an incidental part. That is exactly what happened here. Mr. Graham never should have been charged with aggravated kidnapping, an unlawful restraint, but at most he committed a theft, and the state failed to prove those charges as a matter of law. There is no evidence Mr. Graham secretly confined the driver or that such confinement was independent of a theft of the driver's services, nor was there sufficient evidence that Graham possessed a firearm at the time. For these reasons, Mr. Graham's conviction should be reversed outright. At minimum, Mr. Graham is entitled to a new trial because of the pattern of errors that occurred. And thank you, Counselor. And Justice Harris, any questions? No, thank you. Justice Johnson? I do have one. Are there any cases where this argument regarding, um, you know, incident to another crime where the defendant was not charged with that crime? I didn't see any evidence that he was charged with the theft of services here. Yeah, here he was not charged with the theft. But I, and I believe every case that we've cited, the state has charged multiple offenses, whether it's robbery and kidnapping or assault and kidnapping. I don't think that precludes the application of the Levy-Lombardi Doctrine here. Otherwise, that would give the state the opportunity to simply avoid the question in charging. Justice Johnson, thank you. And Ms. Kinney, are you ready? Yes, Your Honor. Thank you. Please proceed. Thank you. May it please the court. James Babcock was imprisoned and restrained inside the cabin of his own tow truck. This is evidenced by defendant's own statements where he can be heard in the dash camera video telling the victim, turn right here and then I will let you go. Defendant admitted to the crime he committed. He secretly confined him from the Jewel Osco to the BP gas station. Secret confinement is not limited to occurring within an enclosure. It can also be proven through evidence that the defendant isolated the victim from meaningful contact with public where he is unable to escape, cry out or call attention to his confinement. That's what happened to the victim here. He wasn't able to cry out or draw attention to his confinement because he had a firearm pointed directly at him. Defendant's actions imprisoned the victim because he was no longer free to act in the manner of his own choosing without fear and risk of being shot. Defendant also not only threatened the victim, he engaged in conversations with third parties, which the victim heard and made him believe that he may not be going home. The victim was further imprisoned based on this reasonable fear. Isolation of the victim from the public is central to secret confinement. Defendant waited until Richardson left the area and he was alone with the victim in the tow truck to brandish a gun and threaten him with it. No one was aware what was occurring, including the shoppers and the police officer at the Jewel Osco, rendering secret the fact of his confinement. Defendant's actions isolated the victim from the public even though they were parked in a Jewel Osco parking lot. Defendant then forced the victim to leave that parking lot and drive on the highway at gunpoint. Defendant forced the victim away from the public to isolate him from helper safety. Defendant's actions evidenced his intent to isolate him from meaningful contact with the public. The aggravated kidnapping that defendant committed was not merely incidental to a theft of services. Applying the Levi Lombardi doctrine here proves this assertion. Defendant forced the victim to drive at gunpoint from south of the city until he crashed his tow truck in Maywood. Defendant's actions prolonged the secret confinement. Although there was no durational requirement that people had to prove, the confinement lasted roughly 30 minutes, the time it took to get from point A to point B, which would have been longer if it were not for the victim's actions. The detention did not occur during a separate event because it already occurred and defendant thereafter took steps to keep the victim's confinement a secret. The detention or aspertation is not an element of theft or services and was not inherent in that offense because it already occurred. The victim did not need to drive aimlessly on the highway for the defendant to steal his tow truck service. The detention and the kidnapping exposed the victim to a firearm, to defendant's threats to kill him while pointing that firearm, and to the victim being forced to drive at gunpoint to an undisclosed location. The detention from the Jewel created a significant danger independent of that posed by the separate offense. The danger, if any, from after towing the car was not being paid for his service. The secret confinement heightened the danger to the victim because it decreased the likelihood of anyone from the public seeing or hearing what was transpiring. As to the gun, the people contend that not only did it prove beyond a reasonable doubt that defendant secretly confined the victim, he also was armed with a firearm when he did so. A single witness's testimony is sufficient to prove a defendant was armed when it is combined with circumstances under which the witness was able to see the weapon. And the witness does not need to be trained in firearms to know that a firearm is pointed directly at him and to testify about it. Here, defendant pointed the firearm directly at the victim. And in the parking lot, there were lights there, and there were also lights going back on the highway towards Maywood. And the dash camera video shows that these lights were so clear that on the highway, you can see the make, model, and color of cars driving by on the highway. And when the victim was driving, he was looking out the windshield, but when they were parked, they were not moving in the Jewel Osco parking lot. The victim did not just see the gun for a few brief seconds. He started pointing it in the parking lot and continued pointing it while they were driving. And the two parties were not 50. So let me interrupt. Excuse me. It appears that the only evidence of the existence of this firearm to this alleged crime was the victim's testimony. Would you address the issue of whether or not uh, that is sufficient evidence because there was no, no gun was recovered. Never found, never found a gun. I'm sure they searched for one. Yes, your honor. A single witness's testimony is sufficient when there are circumstances which make it possible for him to view the weapon. And the circumstances here allowed them to view the weapon. And the witness, the victim, had familiarity with firearms. He had shot a gun before. He believed the defendant had a Glock 9 and he had handled a gun like that before. And as one of your honors mentioned, he was holding his right side when he was running in the video footage and the victim testified that he pointed the gun with his right hand. And for the final reason, in the BP gas station footage, the victim is completely terrified. He's running around, he's crouching down and the people would contend that he was so fearful because there was a firearm pointed at him. Thank you, your honor. Additionally, the parties were not 50 feet apart from each other. Like in McLaurin, they were seated directly beside each other in the cabin of the tow truck. And because they were seated so close and the victim had such, um, the weapon, he gave explicit details. The only detail he could not provide was not something that could be provided by sight alone because it would be determined by internal mechanism of the gun. And the police were not able to retrieve the weapon because defendant fled the scene and he was not arrested until over a month later. As to defendant's trial, defendant received a fair trial and is unable to prove an error occurred. During jury selection, counsel did not request to remove Maria Flores for cause or through a predatory strike. The trial court was not required to sue a sponte to remove her from the jury when there was no request before it. Defendant has not cited any case law otherwise, and the cases defendant does rely on involves a defense attorney using a predatory strike on a biased juror. At the start of jury selection, the trial court went over its jury selection process in detail. The trial court recognized that if a juror said he or she cannot be there for whatever reason, the court would recognize that that lets the attorney make that request. In that instance, the court instructed that if it does not thereafter state, do I have your word under oath that you will follow the law that I give it to you? Then it was signaling that this person could be struck for cause. The court asked this question to Maria Flores, but not Diana Flores. The court was signaling that she could be to do so. Defense counsel accepted her as a juror. Defendant is trying to benefit from the fact that two jurors with the same last name were in the jury pool, one of whom expressed a concern but was not selected to be on the jury. Any ambiguity in the record is resolved against defendants. The people maintained that the dash camera footage was properly preserved and admitted. All of the witness testimony was properly admitted, and the people did not make an error in the jury verdict forms were completed correctly. And for these reasons, the people maintained that no errors occurred at defendant's trial, and if there was an error, it was a harmless error. Counsel, who's responsible for providing this court with a clear record? The people would maintain that it is defendant's responsibility, and under People v. Hewless, if there's any ambiguity in the record, it's resolved against defendant. Thank you. Any questions, Justice Harris? No, thank you. Justice Johnson? State, do you deny that this was a case, or at some point, was a case of theft of services? The people do not agree that this was a theft of services because the service ended in the parking lot. Whenever they pulled over on the side of the road, the victim agreed to tow the car a short distance to the Jules Osgo parking lot. When they arrived there, the victim asked the defendant, is this where you want the car? He made sure that this is where he wanted it, and defendant said yes. Once he said that, the victim said, okay, well, how do you want to handle payment? Because I cannot drop your car until I'm paid for my service. So at that point, well, a couple of things. Defendant could have demanded that the victim unload his car, and he drive away in it, or try to, or he could have stolen the tow truck, but he didn't do that. He retrieved a gun, and he forced him at gunpoint to leave that Jules Osgo and drive without a disclosed location. So the service that he was hired to perform concluded at the Jules Osgo parking lot. Any further questions? All right, minutes for rebuttal. The opponent. Thank you. I have just a few points I'd like to make. First, I don't think that the theft of services would have terminated in the Jules Osgo parking lot. Essentially, Mr. Graham never got his car back. If there was a theft, it was never completed. And so it continued. It wasn't until they reached Chicago that there was any dispute about payment. Mr. Graham tried to pay, the driver refused his card. They tried to negotiate a lower payment so that Graham could pay for the services. Things did not escalate to this point until the driver refused to return the car. There's nothing in the record to suggest that Mr. Graham could have somehow otherwise stolen the car, or that he should have done so. And so I don't think that's an accurate description of the facts. I also want to touch, Council mentioned the conversations that driver overheard while in the tow truck. This is some of the evidence that was not admissible at trial. Here, this was a phone conversation that Babcock heard one side of. Not only did he testify about his observance of hearing these things, but he then interpreted what Mr. Graham meant by what he was hearing on the one end of the phone calls. And he interpreted those and then internalized how it would, the impression that I had on him. That was an admissible witness testimony. Council also record the dash camera video footage. That evidence too was inadmissible for two reasons. First, the evidence was not properly preserved. And second, it was incomplete. The undisputed facts are that the driver was standing holding the camera while he was talking to a police officer at the scene at the gas station. And yet the officer never retrieved the camera. The record suggests that he didn't return retrieve the footage because he didn't know how to do so and didn't have an evidence technician. But there's nothing to suggest that he couldn't have just taken the camera itself. Instead, he allowed the complaining witness to take this home with him for several days. And even when he said that he tried to get in touch with the witness to bring the footage back, he was unavailable the first time. Then he said, yeah, he's so upset he has to leave town. All of that time, the footage could have been tampered with. And the officer had good reason to know that that footage would have been very useful in this case. It was the only thing that was inside the car recording during this entire incident. Because we don't have, because it wasn't properly preserved, we can't know for sure what's on that video footage. And that's the second part of the problem. It appears to be incomplete. There was supposed to be a pretrial hearing on this point. And the record is silent as to why that pretrial hearing never occurred. Despite that, the video footage was shown to the jury. The explanation given was that the camera would turn on when the truck would stop or start or was jostled to try to capture any traffic incident. But based on the undisputed facts of the case, that should have resulted in at least five to 10 videos. And here we only have two short clips. So when you put together the two pieces of the police officer allowing the complaining witness to take the camera home, and then when the police get it back, there's only two short videos of this incident. It makes it so that this evidence should not have been admitted. Without a hearing, it was shown to the jury. And so I think that evidence coming in did result in an unfair trial. I'll sum up if you would, please. Yes, if there are no further questions, we would ask that Mr. Graham's convictions be reversed outright and that a new trial be precluded under the double jeopardy clause. If however, the court finds that there were sufficient evidence to sustain any of the convictions, Mr. Graham is still entitled to a new trial based on the trial errors that occurred. Thank you. Justice Harris, any questions? No, thank you. Justice Johnson? No, thank you. I want to thank both of our attorneys for their excellent presentations here today, and we will be hearing from us very shortly.